UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ELIZABETH F. RIEDEL,

    Plaintiff,

  v.                                  Case No. 20-CV-1361

KILOLO KIJAKAZI,
Acting Commissioner of Social Security[1],

    Defendant.

## DECISION AND ORDER

Elizabeth F. Riedel seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is affirmed and the case is dismissed.

## BACKGROUND

Riedel filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income alleging disability beginning on March 16, 2017 (Tr. 15) due to chronic fatigue syndrome ("CFS") (Tr. 190). Riedel's applications were denied initially and upon reconsideration. (Tr. 15.) Riedel filed a request for a hearing, and a hearing was held before an Administrative Law Judge ("ALJ")

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's appointment as acting commissioner. *See* Fed. R. Civ. P. 25(d).

on December 5, 2019. (Tr. 34–65.) Riedel testified at the hearing, as did John Pullman, a vocational expert. (Tr. 35.)

In a written decision issued January 28, 2020, the ALJ found that Riedel had the severe impairments of CFS, insomnia, depressive disorder, somatic symptoms disorder, and personality disorder. (Tr. 17.) The ALJ found that Riedel did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 18–19.) The ALJ further found that Riedel had the residual functional capacity ("RFC") to perform light work, with the following limitations: never climb ladders, ropes, or scaffolds and no exposure to workplace hazards such as moving mechanical parts or unprotected heights and limited to simple, routine, and repetitive tasks with no inflexible or fast-paced production requirements, and low stress jobs defined as jobs involving only simple decision-making and no more than occasional changes in work setting. (Tr. 20–26.)

While the ALJ found that Riedel was unable to perform her past relevant work as an administrative clerk, he determined that given her age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that she could perform. (Tr. 26–27.) As such, the ALJ found that Riedel was not disabled from March 16, 2017, through the date of the decision. (Tr. 28.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Riedel's request for review. (Tr. 1–5.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal

standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to This Case*

Riedel argues the ALJ erred in two ways: (1) by failing to properly weigh the opinion of her treating doctor, Dr. John Wall and (2) by failing to include functional limitations in the RFC related to Riedel's CFS symptoms. (Pl.'s Br. at 13–21, Docket # 18.) I will address each argument in turn.

### 2.1 Weight Given to Dr. Wall's Opinion[2]

After suffering from an episode of the flu at age 25 (in approximately 1997), Riedel began experiencing symptoms of fatigue. (Tr. 490.) The symptoms resolved until she experienced a kidney infection two to three years later. (*Id.*) In October 2015, Riedel's treating physician, Dr. Wall, diagnosed her with CFS. (Tr. 815.) Riedel started on a low-carb diet and by early 2016, felt "fully recovered" from her fatigue. (Tr. 491.) She began working two part-time jobs. (*Id.*) However, shortly thereafter, Riedel experienced several stressors and by March 2017, she had lost both of her part-time jobs due to severe insomnia and fatigue. (*Id.*) Riedel alleges a disability onset date of March 16, 2017 due to CFS.

Social Security Ruling 14-1p instructs how the Administration will evaluate CFS. SSR 14-1p, 2014 WL 1371245. The Ruling explains that CFS is "a systemic disorder consisting of a complex of symptoms that may vary in frequency, duration, and severity" but generally causes prolonged fatigue lasting six months or more, and is only diagnosed after alternative medical and psychiatric causes of chronic fatiguing illness have been excluded. *Id.* at *2. SSR 14-1p also describes other potential symptoms of CFS, including, for example, muscle weakness, disturbed sleep patterns, gastrointestinal discomfort, and orthostatic intolerance. *Id.* at *3.

Dr. Wall drafted a letter on Riedel's behalf dated November 21, 2018 addressing her CFS. (Tr. 815.) In the letter, Dr. Wall noted that he had treated Riedel since September 2013

---

[2] In Riedel's summary of the medical evidence, she generally asserts that the ALJ should have given "more weight" to the opinion of the consultative examiner, Dr. Christopher Ovide. (Pl.'s Br. at 12–13.) Riedel does not develop this argument, however, so I will not consider it. *See United States v. Alden*, 527 F.3d 653, 664 (7th Cir. 2008) ("Because it is not the obligation of this Court to research and construct the legal arguments available to parties . . . these arguments are waived and warrant no discussion.") (internal citation omitted).

4

and that Riedel had seen a severe decline in her health due to CFS. (*Id.*) He stated that Riedel had all of the typical symptoms of CFS including: exercise intolerance, post-exertional malaise, widespread body pain, cognitive difficulties, sleep disruption, non-restorative sleep, and orthostatic dizziness. (*Id.*) He stated that her symptoms were exacerbated by extended periods of stress. (*Id.*) Dr. Wall stated that Riedel experienced severe fatigue to the point of difficulty walking. (*Id.*) He noted that Riedel required considerable help from her boyfriend to complete her daily household activities and that outside of the home she "is unable to perform even sedentary work on a sustained basis" due to her CFS. (*Id.*) Dr. Wall authored an additional letter signed November 25, 2019, stating that he had observed Riedel walking to the examination room with a very unsteady gait on several occasions and saw her struggling to get to the room even though while in the room, she appeared composed when sitting down. (Tr. 975.) Dr. Wall further stated that although a person with CFS may go to the gym and exercise from time to time, even if only exercising for twenty minutes, the person will need to rest a complete day before being able to go back to the gym for another twenty minutes. (*Id.*)

The ALJ considered Dr. Wall's opinions, but found them unpersuasive. (Tr. 25.) The ALJ found that Dr. Wall's opinion that Riedel was unable to perform any type of work, even sedentary work, on a sustained basis due to her CFS was inconsistent with his contemporaneous treatment notes that did not reflect documented observations suggestive of significant limitations. (*Id.*) The ALJ further explained that while Dr. Wall noted in his letter numerous instances of observing Riedel having difficulty walking, the observations were not documented in any of the treatment notes or physical examination findings. (*Id.*) The ALJ further found that there was no significant documentation of observations of tiredness,

disorientation, or difficulty walking and her recent sleep records generally suggested that she slept at least six hours per night. (*Id.*)

As an initial matter, Riedel argues that the ALJ erred by failing to give Dr. Wall's opinion controlling weight, citing to SSR 14-1p in support. (Pl.'s Br. at 13–14.) SSR 14-1p, however, cites to 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), *id.* at *6 n.28, which were amended subsequent to its publication. For claims filed after March 27, 2017, like Riedel's, the amended 20 C.F.R. §§ 404.1520c and 416.920c apply. Under the amended regulations, the Administration does not defer or give any specific weight, including controlling weight, to any medical opinions, including medical source opinions. *Id.* Rather, the opinions are evaluated for persuasiveness based on factors such as the opinion's supportability, consistency, the length of the treatment relationship, and the provider's area of specialization, among others. *Id.* Thus, the ALJ did not err by failing to give Dr. Wall's opinion "controlling weight."

The crux of Riedel's remaining argument for reversible error is not entirely clear. (Pl.'s Br. at 14–15.) Riedel argues that the ALJ's statement that she had "mild objective medical findings" and a treatment history inconsistent with allegations of disabling symptoms contradicts his finding that her CFS was a severe impairment. (*Id.*) Riedel also asserts that the ALJ's findings that her treatment history was inconsistent with her claimed subjective symptoms and her lack of specialized treatment are without factual basis. (*Id.* at 14.) Beyond these conclusory assertions, however, Riedel does not point out evidence the ALJ overlooked or explain evidence the ALJ miscited. The ALJ explained that he found Dr. Wall's opinion unpersuasive because of its inconsistency with his contemporaneous treatment notes showing reasonable physical function despite little treatment. (Tr. 25.) The ALJ thoroughly addresses

6

Riedel's allegations of disabling symptoms, her treatment history, and her daily activities and explains why he finds her allegations of disabling symptoms inconsistent with the record evidence. (Tr. 21–26.) Thus, I do not find the ALJ erred in his consideration of Dr. Wall's opinion.

### 2.2 Consideration of CFS in the RFC

Riedel further argues that the ALJ failed to include functional limitations in the RFC related to Riedel's CFS symptoms. (Pl.'s Br. at 15.) Again, Riedel's arguments are unclear and underdeveloped. She seems to be arguing that because the ALJ found her CFS to be a severe impairment, that it must be disabling. (*See id.* at 20.) Riedel lists the potential symptoms of CFS cited in SSR 14-1p and then somewhat incredibly argues that "[i]n finding that plaintiff suffered from severe CFS, the ALJ was required to conclude that she suffered from the symptoms usually associated with CFS, unless there is substantial evidence in the record to support a determination that she did not endure such symptoms," citing *Oppenorth v. Shalala*, 897 F. Supp. 1199, 1203 (E.D. Wis. 1995) in support of this assertion. (*Id.* at 18.)

This quotation from *Oppenorth* is taken out of context. While the court indeed stated that "the ALJ's initial finding that [plaintiff] did in fact have CFS required him to conclude that she suffered from the symptoms usually associated with CFS unless there was substantial evidence in the record to support a determination that she did not endure such symptoms," 897 F. Supp. at 1203, the court in that case had found that the ALJ erred because he discounted the plaintiff's CFS symptoms solely due to the lack of objective evidence, *see id.* It certainly cannot follow that simply because a disease has the *potential* of causing various symptoms that the ALJ must assume the claimant has those symptoms unless the record evidence shows otherwise. Such a policy would improperly shift the burden of proving

disability at the initial steps of the analysis to the Administration when it clearly lies with the claimant.

Furthermore, Riedel's assertion that the ALJ "failed to explain how the functionally limiting effects of her CFS factored into his [RFC] determination . . . ." (Pl.'s Br. at 20) is unsupported. The ALJ thoroughly reviewed Riedel's statements regarding the limiting effects of her symptoms and explained why he found them inconsistent with the record evidence. For example, the ALJ considered Riedel's reports of muscle weakness and decreased leg strength, and her assertion that she was usually bedridden for several hours after performing certain daily tasks. (Tr. 20–21.) The ALJ explained, however, that these assertions were inconsistent with physical examination findings of normal muscle strength, normal gait, and no obvious muscle atrophy (as would be expected if someone was bedridden for long periods of time). (Tr. 21–22.)

The ALJ further analyzed Riedel's CFS using SSR 14-1p, noting that CFS by its nature causes variances in the frequency, duration, and severity of symptoms. (Tr. 24.) The ALJ explained, however, that despite her CFS, Riedel typically displayed normal physical functioning during examinations and failed to pursue significant medical trials or other treatment for her sleep-related issues. (*Id.*) The ALJ then explained how he was accommodating her impairments, including her CFS, in the RFC. For example, given the fact that lifting and carrying heavy objects, standing for long periods, and certain postural activities exacerbated her physical symptoms, the ALJ explained that he was limiting her to light work. (*Id.*) The ALJ further explained that due to her fatigue, he was precluding Riedel from climbing ladders, ropes, and scaffolds, and having her avoid exposure to workplace hazards. (*Id.*) The ALJ also explained how he was accounting for her moderate limitations in

8

concentration, persistence, or pace and in adapting and managing herself. (*Id.*) The ALJ thoroughly addresses Riedel's allegations of disabling symptoms and clearly explains why he did not find the symptoms disabling. The ALJ provided a clear, "logical bridge" between the record evidence and his conclusions in this case, and Riedel has failed to show otherwise.

## CONCLUSION

Riedel alleges the ALJ erred in denying her disability claims based on CFS. I find the decision is supported by substantial evidence and affirm. The case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 2nd day of March, 2022.

BY THE COURT

NANCY JOSEPH
United States Magistrate Judge